NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN J. NONNENMACHER<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>CAPITAL ONE, TRANS UNION, EQUIFAX INFORMATION SERVICES, LLC, and EXPERIAN,<br><br>　　　　　　Defendants. | Civ. Action No. 10-1367 (KSH)<br><br><br><br><u>**OPINION**</u> |

**Katharine S. Hayden, U.S.D.J.**

　　　Underlying this matter is a dispute between plaintiff John J. Nonnenmacher ("Nonnenmacher") and his credit card company, Capital One Bank (USA), N.A. ("Capital One"). Now before the Court are Capital One's motion to dismiss the Amended Complaint [D.E. 15] and Nonnenmacher's cross-motion to file a Second Amended Complaint [D.E. 22].

**I. Facts**

　　　Nonnenmacher resides in Chatham, New Jersey, and has had a Capital One credit card since 2008. (Am. Compl. ¶¶ 3, 12, 15.) Between 2008 and 2010, Capital One sent his bills to the wrong address, causing him to incur fees and finance charges. (*Id.* ¶¶ 15, 21.) On September 23, 2009, Nonnenmacher called Capital One to rectify the situation and was informed that his bills were being sent to 350 15th Avenue, New York, N.Y.; Nonnenmacher's office address is 350 5th Avenue, Suite 7210. (*Id.* ¶¶ 27–32.) The customer representative Nonnenmacher spoke to promised to waive all fees he had incurred and send future bills to his home address in Chatham if he made a payment over the phone. (*Id.* ¶ 33.) Nonnenmacher made the payment.

1

Notwithstanding, the fees were not waived, and he did not receive bills at his home address; instead, his bills were sent to 350 5th Avenue, Suite 1700.  (*Id.* ¶¶ 34–37.)  Nonnenmacher wrote a letter to Capital One on September 28, 2009, recounting the conversation he had with the customer representative on September 23; in the letter, he alerted Capital One that it had sent false and inaccurate information to the credit reporting agencies.  (*Id.* ¶ 38–39.)  He forwarded this letter to the crediting reporting agencies Trans Union, Equifax, and Experian, and he alleges that as a result of the correspondence, those agencies put Capital One on notice of Nonnenmacher's dispute.  (*Id.* ¶¶ 40–44.)  Nonnenmacher asserts that Capital One failed to investigate his dispute and continued to report inaccurate information to the credit reporting agencies.  (*Id.* ¶¶ 45–49.)

Nonnenmacher called Capital One again on December 30, 2009, and spoke to a customer service representative named Karen, who recognized that Capital One had made a mistake, reduced Nonnenmacher's balance, and promised to update his credit report.  (*Id.* ¶¶ 50–51.)  Following the conversation, Nonnenmacher again sent a confirmatory letter to Capital One and sent copies of the letter to Trans Union, Equifax, and Experian, and he again asserts that as a result, those agencies notified Capital One of a dispute.  (*Id.* ¶¶ 52, 54–56.)  Still, Nonnenmacher claims, Capital One again failed to investigate and failed to update his credit history.  (*Id.* ¶¶ 53, 57–60, 62.)  As a result, Capital One continued to report negative and inaccurate information to the credit reporting agencies, including that Nonnenmacher was making late payments.  (*Id* ¶¶ 61, 63.)  In fact, in a letter dated February 17, 2010, Capital One admitted to Nonnenmacher that it had reported incorrect information regarding late payments for the months of June through December 2009.  (*Id.* ¶ 68.)  In addition to the credit reporting agencies, Capital One sent such

incorrect information to companies such as Sears, Best Buy, MBNA, Citibank, Chase, American Express, and Madison Honda.  (*Id.* ¶ 73.)

Nonnenmacher claims that in addition to sending incorrect information to other companies, Capital One employees repeatedly made harassing and threatening phone calls to him at both his office and home addresses in order to recover money he did not actually owe. (*Id.* ¶¶ 70–71.)  Capital One also left messages—which Nonnenmacher claims were defamatory—with his friends, employees, and family.  (*Id.* ¶ 72.)

Nonnenmacher filed the Amended Complaint that is the subject of the current motions on June 28, 2010.  [D.E. 11.]  It states causes of action for (1) negligent hiring; (2) defamation and slander; and (3) violations of the Fair Credit Reporting Act ("FCRA").  (Am. Compl. ¶¶ 74–99.) It seeks $3 million in compensatory damages and $3 million in punitive damages.  (*Id.* Prayer for Relief.)

Capital One moved to dismiss the Amended Complaint on the grounds that (1) the FCRA requires Nonnenmacher to plead the manner in which the credit reporting agencies notified Capital One of his dispute, and he has failed to sufficiently do so; and (2) FCRA preempts Nonnenmacher's state law claims. (Moving Br. at 1–2.)  Nonnenmacher responded by filing a motion for leave to file a Second Amended Complaint to cure the deficiency, add a claim under the Fair Credit Billing Act ("FCBA"), and correct the caption to reflect Capital One's proper corporate name.  (Opp'n Br. at 1–3.)  Nonnenmacher also maintains that his state law claims are not preempted.  (*Id.* at 2–3.)

**II. Nonnenmacher's Motion to Amend**

3

Capital One does not oppose Nonnenmacher's motion to file a Second Amended Complaint to the extent that it cures his deficient pleading of an FCRA claim or adds a claim under the FCBA.  (Reply Br. at 1.)  .

### III. Discussion

Turning to the  argument that the FCRA preempts Nonnenmacher's state law negligence and defamation claims, Capital Oneasserts that 15 U.S.C. § 1681t(b)(1)(F)—one of two FCRA preemption provisions—precludes Nonnenmacher from bringing his state law claims.  (Moving Br. at 7–8; Reply Br. at 4–7.)  Nonnenmacher counters by arguing that § 1681t(b)(1)(F) only preempts claims under state statutory law and that 15 U.S.C. § 1681h(e) allows common law claims like his to proceed.  (Opp'n Br. at 18–19.)

"The Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2, invalidates state law that 'interferes with or is contrary to federal law.'"  Farina v. Nokia Inc. 625 F.3d 97, 115 (2010) (quoting *Free v. Bland*, 369 U.S. 663, 666 (1962)).  There are three ways in which federal law can preempt state law: (1) express preemption; (2) field preemption; and (3) conflict preemption.  *Id.*  In this case, Capital One invokes only express preemption, which "applies where Congress, through a statute's express language, declares its intent to displace state law." *Id.*

Section 1681t(b)(1)(F) provides that "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . [15 U.S.C. § 1681s-2], relating to the responsibilities of persons who furnish information to consumer reporting agencies."  Meanwhile, § 1681h(e) provides that

> [e]xcept as provided in [15 U.S.C. §§ 1681n, 1681o], no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer

4

> reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to [15 U.S.C. §§ 1681g, 1681h, 1681m], or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

One court in this District has determined that while § 1681t(b)(1)(F) preempts a broad array of state law actions, § 1681h(e) provides only a limited exemption. Judge Debevoise observed that

> Section 1681h(e) . . . preempt[s] claims for defamation, invasion of privacy, and negligence—unless the plaintiff can demonstrate "malice or willful intent to injure"—based on . . . two categories of information: (1) disclosures made "pursuant to section 1681g, 1681h, or 1681m" of the FCRA, and (2) disclosures made "by a user of a consumer report" who has "taken adverse action" against a consumer "based in whole or in part on th[at] report."

*Burrell v. DFS Servs., LLC*, --- F. Supp. 2d ---, 2010 WL 4926704, at *11 (D.N.J. Dec. 6, 2010) (second alteration in original) (citing § 1681h(e)). Judge Debevoise determined that the information relating to the plaintiff's accounts furnished by the defendants—which, as here, included a credit card company—did not fall into either category. *Id.* He found that §§ 1681g and 1681h apply to "consumer reporting agencies," and that the defendants were not such agencies because they did "not assemble or evaluate consumer credit information for the benefit of third parties. Instead, they provide information on their own consumers to credit rating agencies, such as Equifax, Experian, and TransUnion, who carry out that function." *Id.* (citing 15 U.S.C. § 1681a(f) for the definition of a consumer reporting agency). Moreover, Judge Debevoise found that § 1681m is duplicative of the second category of information—disclosures made by "users of a consumer report"—and held that the defendants were not "users of a consumer report." *Id.* at *12. He noted that the FCRA defines a "consumer report" as "any written, oral, or other communication of any information by a consumer reporting agency," but

5

excludes from this definition any "report containing information solely as to the transactions or experiences between the consumer and the person making the report." *Id.* (citing 15 U.S.C. §§ 1681a(d)(1), 1681a(d)(2)(A)(i)).  Judge Debevoise then held that because the plaintiff's claims were based on transactions between himself and his credit card company, they were not based on a consumer report, and the preemption provision of § 1681h(e) did not apply.  *Id.*

Judge Debevoise's reasoning applies with equal force in this case.  Capital One is not a consumer reporting agency because it does not assemble or evaluate consumer credit information for use by third parties; like the defendants in *Burrell*, it provides information on its own customers to the credit rating agencies, who then assemble and evaluate that information.  In addition, Capital One is not a "user of consumer reports" with regard to the information at issue in this case.  Nonnenmacher's claims relate to transactions between him and Capital One; any report Capital One provided to the credit rating agencies on those transactions would not constitute a consumer report, and therefore, the preemption provision of § 1681h(e) is inapplicable here.

But the preemptive effect of § 1681t(b)(1)(F) is much broader.  "By enacting Section 1681t(b)(1)(F), Congress 'wanted to eliminate all causes of action relating to the responsibilities of persons who furnish information to consumer reporting agencies.'" *Campbell v. Chase Manhattan Bank, USA, N.A.*, 2005 WL 1514221, at *16 (D.N.J. June 27, 2005) (Bissell, C.J.) (quoting *Jaramillo v. Experian Info. Solutions, Inc.*, 155 F. Supp. 2d 356, 361 (E.D. Pa. 1991)). Several courts in this District have held that this preemption extends to both statutory and common law claims.  *Burrell*, --- F. Supp. 2d ---, 2010 WL 4926704, at *12; *Cosmas v. Am. Express Centurion Bank*, --- F. Supp. 2d ---, 2010 WL 4961641, at *10 (D.N.J. Dec. 1, 2010) (Wolfson, J.); *Bartley v. LVNV Funding, LLC*, 2010 WL 2629072, at *4 (D.N.J. June 28, 2010)

(Hayden, J.); *DiMedio v. HSBC Bank*, 2009 WL 1796072, at *9 (D.N.J. June 22, 2009); *Campbell*, 2005 WL 1514221, at *17. "The phrase '[n]o requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common-law rules." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 521 (1992). Nonnenmacher's state law claims are therefore preempted and must be dismissed.

**IV. Conclusion**

Based on the foregoing, Nonnenmacher's motion for leave to amend the complaint is granted to the extent that it revises his FCRA claim, adds a claim under the FCBA, and corrects Capital One's corporate name in the case caption. However, Nonnenmacher's state law claims for negligent hiring and defamation and slander are dismissed because the FCRA preempts them.

                                                  /s/ Katharine S. Hayden
March 31, 2011                              Katharine S. Hayden, U.S.D.J.